IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(Atlanta Division)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Criminal Case No. |
| v. | ) | CR82-220A |
| | ) | |
| RAMIRO F. HELMEYER, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW

Defendant, Ramiro F. Helmeyer, through undersigned counsel, moves to dismiss the instant case and states:

Factual Background

Over thirty (30) years ago, the Defendant was indicted in Case Number CR82-220. At all relevant times, the Defendant was a Venezuelan National and was unable to communicate fluently in English. At all relevant times, the Government was aware of this and/or should have been aware of this.

The Defendant was charged with various counts of knowingly making false statements in connection with the purchase of firearms, in violation of 18 U.S.C. §922(a) (6). The alleged intentional false statement was that the

Defendant resided at the location on his legally issued Georgia drivers' license, an apartment that he had been living in while in Atlanta and while attending language school. The Government's position appears to be that this was an intentionally false statement given that the Defendant was Venezuelan, and at the time of the purchase of the firearms, was in the United States on a tourist visa..

The Defendant bonded out of jail and failed to return for a court date on July 7, 1982. A warrant was issued for the Defendant's arrest. A review of the Court's file does not indicate *any* effort by the Government in the past thirty (30) years to extradite the Defendant who lived openly and notoriously in Caracas, Venezuela, including time in the Venezuelan government. Furthermore, his father-in-law, Alejandro Tinoco, an attorney and ambassador, whose address is noted on his stationary, wrote a letter on Mr. Helmeyer's behalf in an attempt to facilitate a resolution to the case. Despite this contact, the government failed to prosecute this case and made no effort to arrest and extradites Mr. Helmeyer. Unfortunately, Dr. Tinoco passed away in April 2004. He would have been a defense witness in this case regarding, inter alia, the Defendant's alleged criminal intent.

It is likely, and should be presumed, absent the Government presenting affirmative evidence otherwise, that the ATF, has closed and destroyed its

files and thus all evidence related to the case. One of the two pawn shops involved in the alleged purchases is now apparently closed. Thus, many or all of the records associated with that pawn shop are likely now unavailable - some of which may have contained exculpatory evidence or which may have led defense counsel to ask witnesses questions which may have provided answers exculpating the Defendant.

Additionally, key witnesses in this case are now 30 years older – and would require a vigorous voir dire prior to their testifying as to whether or not their recollection of the events is independent or "recalling something as in a dream…" *U.S. v. Chase*, 135 F. Supp. 230 (N.D. Ill. 1955). With regard to key Government witnesses, the investigating agent's sworn complaint discusses various alleged transactions between specific key witnesses and the Defendant. However, the agent does not state anywhere that the key witnesses communicated in Spanish with the Defendant. Given that the Defendant was unable to communicate fluently in English, the Government cannot establish beyond a reasonable doubt that the Defendant intended to make the alleged misrepresentations to that witness in connection with the purchase of the subject firearms.

Had the Government made an effort to extradite the Defendant within a reasonable period of time from the alleged events, the Defendant would have

had access to live (versus deceased) witnesses, reliable witnesses with an independent recollection of the alleged events, documents which were directly or indirectly exculpatory, [1]etc.  As a result of the Government's failure to take any steps towards extraditing Defendant in the last thirty (30) years or to otherwise pursue these cases, the Government is highly unlikely to be able to prove their case and the Defendant has, no doubt, been deprived of exculpatory and potentially exculpatory evidence.

Barker v. Wingo and the Defendant's
Sixth Amendment Right to a Speedy Trial

In Barker v. Wingo, 407 U.S. 2182 (1972), the Supreme Court articulated the balancing test used to determine whether a defendant's Sixth Amendment right to a speedy trial was violated and thus whether his case must be dismissed.  The Court enumerated four factors which should be considered:  1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion  of his right to a speedy trial; and 4) prejudice to the defendant. Id. at 530.  As to these factors, the court stated:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as

---

[1] By indirectly exculpatory, the Defense means documents which were not exculpatory on their face, but which may have led to questions of witnesses which in turn may have given exculpatory answers, or answers which led to further questions which may have led to exculpatory answers.

> may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

Id. at 533. The balance of these four factors, as explained below, tips heavily in favor of the Defense and thus heavily in favor of dismissing the instant case.

First Barker Factor - - Length of Delay. The Defendant was indicted thirty (30) years ago. Accordingly this factor heavily favors dismissing the instant case. In one of the few cases the Defense could find involving a delay of even a remotely similar magnitude, the Northern District of Illinois aptly stated:

> The thought of ordering him to trial on this charge after a lapse of twenty years shocks the imagination and the conscience. While I have not been informed as to how many of the witnesses are available to either side, it can almost be judicially noticed that the passage of that length of time will have made some of them inaccessible. Even if two decades have left them alive and within the jurisdiction of this court, certainly their memories of those long past events are clouded. They could not be said after that length of time to be testifying to what they remember; they would be recalling something as in a dream, a kind of phantasmagoria, rather than an independent recollection. The human mind is so constructed that remembrance of even the sharpest experiences dulls with time. Witnesses, however, honest, could not respond with any accuracy to cross-examination, and another important right would thus be lost to petitioner.

U.S. v. Chase, 135 F. Supp. 230 (N.D.Ill. 1955) (emphasis added).

Second Barker Factor - - Reason for Delay. A substantial reason this case has been delayed was the Government's continuing negligence and failure to extradite or even attempt to extradite the Defendant from Venezuela - where it knew or should have known the Defendant was. Moreover, it is the Government, not the Defendant, who is charged with the responsibility of moving criminal cases forward. *Barker* at 531. As subsequently explained by the Supreme Court in Doggett v. U.S.:

> Although [Government/Prosecutorial] negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of much negligence varies inversely with its protractedness, cf. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

505 U.S. 647, 657 (1992) (emphasis added).

Thus, the Government had and has an obligation to make a reasonable effort to prosecute these cases despite the Defendant's return to Venezuela (the country of his citizenship). However, in the past thirty (30) years, and despite knowing at all relevant times that the Defendant was a Venezuelan national and that Venezuela is where he actually was (or was most likely to be), the Government has apparently made no effort to extradite the Defendant.

Moreover, pursuant to the Extradition Treaty of 1922 between the United States and Venezuela, the Defendant could have been extradited; see Article II, Section 18 thereof (obtaining property by false pretenses where the amount of property exceeds 200 dollars in the United States of America is an extraditable offense). Despite this treaty, the United States has failed for the last thirty (30) years to take any steps towards extraditing the Defendant and has, thus, showed its intent to abandon this case and permit them to be dismissed for lack of prosecution.

The government will undoubtedly argue that the delay in this matter is due to the actions of the Defendant. The government will argue that the Defendant intentionally left the jurisdiction of the court. It should be noted again that the Defendant had a very limited understanding of English, was in the United States to try to improve his English, and upon realizing his problem contacted the court and then the government through his Venezuelan

attorney, his father-in-law, Dr. Tinoco. It should be further noted that the government, after the Defendant failed to appear for court in July of 1982, issued a warrant for the Defendant's arrest and obtained a new Indictment charging the Defendant with Failure to Appear, Case Number 82-CR-355. Twenty five years later the government, on its own motion, moved to voluntarily dismiss this particular case. The motion was granted by Judge Batten on March 23, 2007 and case number 82-CR-355 was closed.

Third Barker Factor - - Assertion of Speedy Trial Right. The Defendant has not asserted his right to a speedy trial. Nonetheless, this is but one of four factors - none of which is dispositive - in determining whether the Defendant's cases should be dismissed. The length of delay (30 years), the Government's negligence over that period of time and the final Barker factor (discussed below) significantly outweigh this third Barker factor.

Fourth Barker Factor - Prejudice to Defendant. The final Barker factor, like the first Barker factor, weights <u>heavily</u> in the Defendant's favor. As stated by the Supreme Court in Barker:

> A fourth factor is prejudice to the defendant. [***] [T]he <u>inability of a defendant adequately to prepare his case</u> skews the fairness of the entire system. If <u>witnesses die or disappear</u> during a delay, the prejudice is obvious. There is also prejudice if defense <u>witnesses are unable to recall accurately events of the distant past</u>. <u>Loss of memory</u>, however, is not always reflected in the record because what has been forgotten <u>can rarely be</u>

<u>shown</u>.

407 U.S. at 532 (emphasis added).

As set forth more particularly in the Factual Background section above, the Defendant has been and is likely to be severely prejudiced in his ability to adequately prepare for trial. Files have probably been closed and records have likely been lost or destroyed. Witnesses will be difficult to locate and some may be permanently lost to both the defense and the prosecution. Some witnesses, like Dr. Tinoco, are, sadly, dead. After thirty (30) years, memories of the alleged events are likely to be clouded, not independent, non-existent and/or nearly non-existent - and thus unreliable. See U.S. v. Chase, supra (and quoted passage). Additionally, it is likely that the Defense would have been able to locate additional witnesses but, due to the passage of thirty (30) years, now cannot do so. In sum, the Defense has effectively been denied exculpatory evidence, the right to confrontation and cross-examination of witnesses, and the Government's evidence in this case is simply not reliable.

Balance of Barker Factors. After thirty (30) years, the balance of the Barker factors tips decidedly in favor of the Defense. Thus, the Court should dismiss this case.

<u>This Case Should also be Dismissed</u>
<u>Pursuant to Fed.R.Crim.P. 48(b)</u>

Federal Rule of Criminal Procedure 48(b) (3) provides another additional and alternative basis for this Court to dismiss this case. That rule states:

> The court may dismiss an indictment, information, or complaint if <u>unnecessary delay</u> occurs in... bringing a defendant to trial.

Fed.R.Crim.P 48(b) (emphasis added). "This rule is a restatement of the <u>inherent power</u> of the court to dismiss a case for want of prosecution." See Rule 48, 1944 Advisory Committee Notes to Subdivision (b) (emphasis added). "The Committee considered the relationship between Rule 48(b) and the Speedy Trial Act. Rule 48(b), of course, <u>operates independently</u> from the Act." See Rule 48, Advisory Committee Notes to 2002 Amendments (emphasis added).

Thus, independently of the Court's determination of whether there has been a violation of the Defendant's constitutional right to a speedy trial pursuant to *Barker*, the Court can and should still find that these instant and extreme circumstances warrant a dismissal pursuant to the Court's inherent power and Rule 48(b). See, e.g., U.S. v. Watkins, 339 F.3d 167, 180 (3rd Cir. 2003) (concurring opinion); U.S. v. Goodson, 204 F.3d 508, 513-515 (4th Cir. 2000).

## The Government Cannot Prove the Case
## Against the Defendant Without Proof of Intent

In *U.S. v. Harrelson, 705 F.2d 733 (5th Cir. 1983)*, the court clarified the intent requirement of 18 U.S.C. Section 922(a)(6) as a "general" intent crime as opposed to a "specific" intent crime. The government must prove, when charging a violation of this section, as in this case, that the Defendant "imparted false information with the general intention of deceiving or likely to deceive the dealer." *U.S. v. Harrelson at 736.*

General intent requires that the Defendant intended to do an act which results in harm, but does not require that the Defendant intend the harm. In this case, the Defendant used an address which he lived at while a student in Atlanta. The address was on his Georgia driver's license, which he obtained legally while residing in Atlanta. When asked for identification for purpose of the purchase of the firearms he presented his driver's license and the clerks at the pawn shops used the information therein to fill out the requisite federal forms. Not only did the Defendant not intend to violate federal law, the Defendant did not intend to fill out or sign forms that contained false information.

The difficulty of this proof requirement is clear. The government cannot prove the Defendant's general intent without the Defendant himself

testifying that he knew he was providing false information on the forms.

## Conclusion

The legal analysis above is clearly sufficient to justify a dismissal of the above styled matter. If the Court has any question or doubts concerning the legal analysis above, in particular the application of the *Barker* factors, the Court need only look at the elements required to prove the charges. The government must prove that the Defendant knowingly and intentionally misrepresented material facts in an effort to obtain firearms in violation of the Federal Statute. Factually, the government will be hard pressed to prove that the Defendant understood what was being requested of him when he either filled out or signed the documents needed to purchase the firearms, that his statements on the form were materially false, and that he intentionally misrepresented these facts to mislead the sellers.

WHEREFORE, the Defendant respectfully requests that this Honorable Court dismiss this case.

Respectfully submitted this 29th day of May 2013.

By: */s/ James R. Hodes*
James R. Hodes
Georgia Bar No. 358647

JAMES R. HODES, P.C.
Attorney at Law
1867 Independence Square
Suite105
Atlanta, GA  30338
Phone:  (770) 559-1649
Fax:  (678) 865-8106

| IN THE UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF GEORGIA<br>(Atlanta Division) ||
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RAMIRO F. HELMEYER,<br><br>      Defendant. | )<br>)  Criminal Case No.<br>)  CR82-220A<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorney(s) of record in the case, Assistant United States Attorney Kim Dammers.

This 29th day of May 2013.

                                          /s/ James R. Hodes
                                        James R. Hodes
                                        Georgia Bar No.358647
                                        Attorney for Defendant Ramiro F. Helmeyer

James R. Hodes, P.C.
Attorney at Law
1867 Independence Square, Suite105
Atlanta, GA  30338
Phone:  (770) 559-1649  Fax:  (678) 865-8106
jim.hodes@yahoo.com