IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. CR-82-220A |
| RAMIRO HELMEYER | : | |

THE UNITED STATES'RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Comes now the United States of America, by Sally Quillian Yates, United States Attorney, and Ryan K. Buchanan, Assistant United States Attorney for the Northern District of Georgia, and files this Response to Defendant's Motion to Dismiss as follows:

## Background Statement

Defendant Ramiro Helmeyer was indicted on June 17, 1982 for making false statements in connection with a firearm purchase. On July 6, 1982, Helmeyer was to appear in Court. However, Helmeyer failed to appear and absconded. The Court then issued a warrant for Helmeyer's arrest on July 8, 1982. Nearly thirty (30) years later, Helmeyer moved to set aside the arrest warrant, and, on September 6, 2012, the Court denied Helmeyer's motion. Since Helmeyer failed to appear in 1982, he has not been arrested nor voluntarily or involuntarily extradited from Venezuela or any other country to the United States to answer these charges, for a period of over thirty (30) years.

Helmeyer now moves to dismiss the indictment against him. For the reasons set forth below, the Court should summarily deny Helmeyer's motion because his status as a fugitive nullifies his request for relief from the Court under the fugitive disentitlement doctrine. If the Court is inclined to reach the merits of the motion, the Court should still deny the motion as there has been no Sixth Amendment Speedy Trial Violation. Finally, the Court should also deny defendant's motion pursuant to Rule 48 of the Federal Rules of Criminal Procedure as Helmeyer's actions, not those of the United States, have caused the delay.[1]

<u>Argument and Authority</u>

**I. This Court Should Summarily Deny Defendant's Motion Under the Fugitive Disentitlement Doctrine**

**A. The defendant is a fugitive from justice**.

Helmeyer has been a fugitive from this Court for over thirty (30) years. In fact, his motion to dismiss cleverly fails to reveal his whereabouts – continuing his ongoing status as a fugitive. Helmeyer now asks the Court to reward his ability to avoid arrest to answer and be prosecuted on the charges by dismissing the indictment against him.

---

[1]The defendant also appears to challenge the United States' ability to prove the elements of the offense. While the defendant does not allege that the difficulty of proving the elements of the offense is a basis for dismissing the indictment, the United States notes that the defendant was properly indicted and the matter of the sufficiency of the United States' evidence is not ripe for consideration until the defendant is present for trial.

"Whether or not a defendant is a fugitive is a question of fact, which is determined by the acts and intent of the defendant." United States v. Nabepanha, 200 F.R.D. 480, 482 (S.D. Fla. 2001). "The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending." United States v. Catino, 735 F.2d 718, 722 (11th Cir. 1984) cert. denied, 469 U.S. 855 (1984), citing Matter of Assarsson, 687 F.2d 1157, 1161-1162 (8th Cir. 1982); In re Assets of Martin, 1 F.3d 1351, 1356 (3rd Cir. 1993) cited with approval United States v. Barnette, 129 F.3d 1179, 1184 (11th Cir. 1997); United States v. Fonseca-Machado, 53 F.3d 1242, 1243-1244 (11th Cir. 1995) ("He must be found to have absented himself from the jurisdiction to avoid prosecution.")

As set forth in Catino, "[t]his is true whether the defendant leaves the jurisdiction intending to avoid prosecution or, having learned of the charges while legally outside of the jurisdiction, 'constructively flees' by deciding not to return." Catino, 735 F.2d at 722 quoting Jhirad v. Ferrandina, 536 F.2d 478, 483-484 (2nd Cir. 1976) cert. denied , 429 U.S. 833 (1976); Barnette, 129 F.3d at 1184. "It follows that a fugitive remains a fugitive until a formal and voluntary consent to extradition is executed." Paul v. Clinton, 2002 WL 31752289 (Cal. App. 2nd Dist. 2002).

Helmeyer, after being arrested and informed of the criminal charges against him, purposefully failed to show up for his next

scheduled hearing on July 7, 1982, and evaded this Court's reach by leaving the United States. From that date until the present, he has had the ability to return to the United States. However, he has failed to do so. Helmeyer's failure to return to the United States manifests his clear intent to avoid prosecution. Accordingly, Helmeyer is a fugitive.

**B. As a Fugitive From Justice, the Fugitive Disentitlement Doctrine Should Prohibit this Court From Entertaining the Defendant's Motion to Dismiss.**

The fugitive disentitlement doctrine is an equitable doctrine, with its purpose to deny to those who have fled the court's jurisdiction any benefits of the court system. Ortega-Rodriguez v. United States, 507 U.S. 234, 244 (1993); Barnette, 129 F.3d at 1183-1184; Federal Deposit Insurance Corporation ("FDIC") v. Pharaon, 178 F.3d 1159, 1161 (11th Cir. 1999). Although fugitive status "does not strip the case of its character as an adjudicable case or controversy [,] it disentitles the [fugitive] to call upon the resources of the Court for determination of his claims." Id.; Molinaro v. New Jersey, 396 U.S. 365, 366 (1970).

The fugitive disentitlement doctrine has been applied to dismiss a fugitive's criminal and civil appeals (whether or not the fugitive was a fugitive from criminal prosecution or a civil order of contempt), as well as a fugitive's affirmative claims for relief. See e.g. Molinaro v. New Jersey, 396 U.S. at 366 (appeal of criminal fugitive's case dismissed); Ortega-Rodriguez v. United

States, 507 U.S. at 244 (appeal of criminal fugitive's case dismissed); Barnette, 129 F.3d at 1185-1186 (fugitive's appeal of order finding him in civil contempt was dismissed); Maqluta v. Samples, 162 F. 3d 662, 664 (11th Cir. 1998) (criminal fugitive's civil Bivens action dismissed); Empire Blue Cross and Blue Shield v. Finkelstein, 111 F.3d 278, 282 (2nd Cir. 1997) (fugitive's appeal of civil judgement against him dismissed); Prevot v. Prevot (In re Prevot), 59 F.3d 556, 567 (6th Cir. 1995) (father's civil suit to enforce International Child Abduction Remedies Act dismissed since he was a criminal fugitive); Pesin v. Rodriquez, 244 F.3d 1250, 1253 (11th Cir. 2001) (mother's appeal ofdecision under the International Child Abduction Remedies Act to return children to father in Venezuela dismissed after the mother failed to appear at two contempt hearings);[2] but see United States v.

---

[2]In all of these cases, as well as in the instant case, the fugitive is seeking affirmative action from the court, whether that be an appeal from a criminal conviction or order of contempt, or as plaintiff in a Bivens action or in an international child custody dispute. The fugitive disentitlement doctrine has been declined to be used in cases where the fugitive is not seeking affirmative action but was forced to contest an action, such as where the fugitive has been named a party in a civil suit: the crux of the declination to use the doctrine stemmed from the court's ability to fashion a more appropriate remedy to address to the fugitive's status, such as sanctions for failure to appear for deposition and/or where the outcome of the case could otherwise be enforceable. See e.g. Degan v. United States, 517 U.S. 820 (1996) (dismissal of fugitive's claim to civil forfeiture action overturned); FDIC v. Pharaon, 178 F.3d at 1162 ("We conclude that application of the fugitive disentitlement doctrine in this case to bar [Pharaon], a fugitive in a criminal case, from defending himself in a civil case, albeit a related one [in which the fugitive has filed an Answer], would not be a 'reasonable response

Grajales-Lemos, 2012 WL 1405712 (March 27, 2012 M.D. Fla.)(court
did not apply the fugitive disentitlement doctrine, but still
denied defendant's motion to dismiss after 17 year delay).

First, to apply the fugitive disentitlement doctrine, the
defendant's fugitive status must have some connection to the
litigation at hand. Ortega-Rodriquez, 507 U.S. at 242-248;
Barnette, 129 F.3d at 1183. Clearly, application of the doctrine is
correct in the instant case, as Helmeyer seeks dismissal of the
very criminal case for which he has failed to appear to avoid
prosecution.

Second, there must be impossibility of enforcement. See Smith
v. United States, 94 U.S. 97 (1876); Bonahan v. Nebraska, 125 U.S.
692 (1887); Eisler v. United States, 338 U.S. 189 (1949);
Ortega-Rodriquez, 507 U.S. at 239-240; Barnette, 129 F.3d at
1183-1184. In other words, if the Court was to entertain the
petition of a fugitive, there is no assurance that whatever
judgment the Court rendered would be enforced, since a fugitive is
outside of the reach of the law and would likely ignore any result
unfavorable to the fugitive. Smith, 94 U.S. at 97; Pesin v.
Rodriquez, 244 F.3d at 1252. As applied to the instant case, if

to the problems and needs that provoke[d]' the doctrine. If such
application of the doctrine were permitted, virtually anyone might
be able to obtain a judgment against a fugitive simply by filing a
claim and moving for judgment based on the fugitive disentitlement
doctrine"). Degan's applicability to civil forfeiture actions has
been limited after Congress passed the Civil Asset Forfeiture
Reform Act of 2000.

this Court were to deny Helmeyer's Motion to Dismiss and set the matter for trial, the order would be unenforceable against Helmeyer, as he would remain a fugitive.

The policy behind the doctrine lies in the difficulty of enforcement against an individual not willing to subject himself to the court's authority; the inequity of allowing a fugitive to use the resources of the court only if the outcome is an aid to him; the need to avoid prejudice to the non-fugitive party; the need to impose a penalty for refusing to participate in the judicial process; and the need to discourage people from becoming fugitives. Barnette, 129 F.3d at 1183; Molinaro, 396 U.S. at 366; Empire Blue Cross and Blue Shield v. Finkelstein, 111 F.3d at 280; Mishkin v. Jeannine Gurian Trust Number One, 2008 WL 708733 *7 (S.D. Fla. 2008).

Helmeyer is not the first criminal fugitive to seek affirmative assistance from the trial court concerning his own criminal case while remaining safely outside of the reach of the Government's prosecution. In United States v. Nabepanha, the defendant left the United States for Israel, but eventually found out that he had been indicted in the Southern District of Florida with several co-defendants on charges involving receipt and possession of stolen property. Nabepanha, 200 F.R.D. at 482. When one of the co-defendants who had been arrested wanted to take the fugitive's deposition in order to prepare the co-defendant's

defense, Nabepanha still in Israel was appointed a public defender in Miami, who filed a Motion for Discovery, seeking to know what evidence the Government had against the fugitive Nabepanha. Id. After finding that Nabepanha was indeed a fugitive, the Court denied his motion under the fugitive disentitlement doctrine.

> "To accept Defendant [Nabepanha's] position that the fugitive disentitlement doctrine does not apply to a discovery request in a criminal matter by a fugitive is to invite all criminals to flee from the United States before their arrest. Upon learning [that] charges have been brought for a crime in the United States, the fugitive, through counsel, could then request discovery from the government. This would allow the fugitive to preview or test the strength of the government's evidence without being subject to the court's jurisdiction. If the evidence is weak, the fugitive could elect to return and seek affirmative relief by way of dismissal of the indictment. If the government's evidence is strong, the fugitive could simply remain outside the reach of the court. The fugitive would receive potential benefits while risking nothing, thereby obtaining an advantage."

Id. at 483.

Another example of fugitive gamesmanship is United States v. Diacolios, 837 F.2d 79 (2nd Cir. 1988), where the fugitive disentitlement doctrine was not raised but probably should have been as it perfectly showed that "the fugitive would receive potential benefits while risking nothing." Diacolios, the fugitive challenged his indictment through his attorney, as did Helmeyer here, while safely remaining in Greece. Id. at 80. First, the court refused to try him in absentia (at defendant's request), because he had never personally appeared to respond to the charges against him. Id. at 81. As a result, "[t]he government then moved to have

the trial date adjourned indefinitely, and the district court granted the government's motion." Id. at 81. Second, after the case was reassigned to another judge a year later, the fugitive moved to dismiss the indictment under Barker v. Wingo: the trial court granted the defendant's motion, the government appealed, the appellate court reversed. Id. at 82-84. The Second Circuit acknowledged the unenforceability of the appellate decision ruling against the fugitive, reinstated the indictment and noted that the defendant's willing and continued absence from the United States was the bar to his trial – not the United States' inability to extradite him. Id. at 84.

Put another way: "A true fugitive, whose location is unknown, or who is successfully resisting government efforts to bring him into the jurisdiction, will not be able to obtain dismissal of an indictment. This is as it should be. Otherwise, the courts would be sanctioning the playing of games by fugitives." United States v. Salzmann, 548 F.2d 395, 404 (2nd Cir. 1976).

Helmeyer remains a fugitive but seeks relief from this Court relating to his criminal case, i.e. the dismissal of the indictment. Because Helmeyer has not subjected himself to the jurisdiction of this Court, the fugitive disentitlement doctrine is a proper bar to deny his motion to dismiss the indictment.

**II.  If This Court Entertains Defendant's Motion, The Court Should Find that There Is No Sixth Amendment Speedy Trial Violation**

To determine whether a pre-trial delay violates the Sixth Amendment right to a speedy trial, courts must carefully balance the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. United States v. Doggett, 505 U.S. 647, 652 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972). "If, after the threshold inquiry is satisfied and the second and third factors are considered, all three of these factors weigh heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006) (citations omitted).

**a. Length of Delay**

Since delays exceeding one year are generally found to be "presumptively prejudicial," the delay in this case of 30 years may give rise to a presumption of prejudice. While the pre-trial delay may warrant examination of the remaining Doggett factors, it does not require dismissal of the indictment. The defendant retains the burden of satisfying the remaining three factors in the speedy trial inquiry under Doggett and Barker. See Doggett, 505 U.S. at 651-52 (finding that post-indictment delays approaching one year were presumptively prejudicial and warranted examination of other factors); United States v. Clark, 83 F.3d 1350, 1354 (11th Cir.

10

1996) (noting that delays exceeding one year are generally found to be presumptively prejudicial); Ingram, 446 F.3d at 1336-1337 (finding two-year delay to be "twice the threshold for presuming prejudice").

**b. Reason for Delay**

In assessing the reason for the delay, this Court must ascertain whether the United States or the defendant is more responsible for the delay. Doggett, 505 U.S. at 652. The conduct of the government must be weighed against the conduct of the defendant. Barker, 407 U.S. at 2192; United States v. Bagga, 782 F.2d 1541, 1543 (11th Cir. 1986). As made clear by Helmeyer's continuing status as a fugitive, Helmeyer absconded to avoid prosecution on the charges in the indictment.

The United States is unable to secure Helmeyer's presence for trial.  Helmeyer is a Venezuelan national who resides in Venezuela. Although the United States has an extradition treaty with Venezuela, the Venezuelan Constitution prohibits the extradition of Venezuelan nationals.  As noted in Helmeyer's brief, "[a]t all relevant times, the Defendant was a Venezuelan National[,]" who lived "openly and notoriously in Caracas, Venezuela, including time in the Venezuelan government."  (Doc. 21 at 1 and 2)  Therefore, even if the United States located Helmeyer in Venezuela and pursued extradition, Venezuela would not extradite him to the United States to stand trial on these charges.

11

The 30 year delay bringing this case to trial is entirely the fault and responsibility of Helmeyer and, as a matter of law, cannot be attributed to the United States because Helmeyer cannot be extradited to the United States from Venezuela. "A government's inability to arrest or try a defendant because the defendant's own evasive tactics constitutes a valid reason for delay." Villarreal, 613 F.3d at 1351, citing to Ingram, 446 F.3d at 1337. Moreover, as discussed further below, Helmeyer's awareness of the charges against him and his continued avoidance should weigh heavily against him.

The Eleventh Circuit has said in dicta that the inability to extradite the defendant from a foreign country may be a valid reason for delay. In United States v. Bagga, 782 F.2d at 1543, the extradition treaty with India did not cover the offense with which defendant was charged, putting the extradition of defendant into "great doubt." Moreover, the United States did not have an exact address for Bagga in India, once it became known that he had left the United States, "a prerequisite to a request for extradition proceedings." Id.

"[S]uch efforts do not require the government to pursue futile legal gestures....The best that can be said is that if the government was at fault for not locating Bagga in India, it was clearly no more than mere negligence...."[A] more neutral reason, such as negligence, does not necessarily tip the scale in favor of

12

the defendant, particularly where the defendant was at liberty and outside the jurisdiction where the indictment was returned." United States v. Walters, 591 F.2d 1195, 1201 (5th Cir. 1979); United States v. Carter, 603 F.2d 1204, 1207 (5th Cir. 1979). Bagga, 782 F.2d at 1543-1544. After enumerating the various but less-than-exhaustive efforts the government undertook to locate Bagga in the United States (not knowing he had left for India) before Bagga voluntarily surrendered, the court found no unreasonable delay. Id. at 1545. See also, United States v. Woods, 851 F.Supp. 1564, 1568-1569 (S.D. Fla. 1994) (despite the existence of an extradition treaty with the Bahamas, the United States was reasonable to consider extradition a futile effort); United States v. Kresler, 392 Fed.Appx. 765, 2010 WL 3245096 (11th Cir. 2010) (unpublished) (U.S. Attorney's erroneous assumption that extradition from Israel was foreclosed was negligent, a more neutral reason, but was far outweighed by defendant's extraordinary efforts to avoid prosecution).

Other circuits have more directly found in the favor of the government. The Second Circuit considered, under Barker, whether the government should be held accountable for the delay in failing to extradite the defendant "who remained in Venezuela as a fugitive." Montalvo v. United States, 862 F.2d 425, 426 (2nd Cir. 1988). The court noted that "Venezuela's extradition treaty with the United States does not provide for extradition of narcotics

13

offenses" such as those Montalvo was charged with. Id. "The United States government could do little to bring [the defendant] to trial in the United States." Id. As a result, this factor was found to be a valid reason for the delay. Id.

In United States v. Blanco, 861 F.2d 773 (2nd Cir. 1988), at issue was an extradition involving Colombia and whether the United States acted with due diligence by not even requesting that the defendant, Colombian national, be extradited to face the 1975 charges. After reviewing the history of the extradition process with the United States (including the effects of the 1888 and 1982 treaties), the court held that seeking extradition of a defendant from Colombia of a Colombian citizen would have been futile and "[d]ue diligence does not require the government to pursue goals that are futile." Id. at 776-778.

Defendant Blanco alleged that the United States should have tried to lure her away from Colombia or arrest her inside of Colombia. Id. at 778.

The court noted that the government, however, had no duty to seize Blanco in Colombia. The United States has no right to enforce its laws in another country without that country's consent or acquiescence. Since Colombia had a policy of refusing to extradite its citizens to the United States, the government reasonably could assume that Colombia would not have consented to Blanco's seizure [arrest], and a seizure of Blanco without Colombia's consent would

14

likely have been considered a violation of international law. Id.
at 779 (citations omitted). The court found that the lengthy ten-
year delay must be attributed to the defendant, because she knew of
the charges and continued to avoided prosecution. Id. at 778.

In United States v. Diacolios, 837 F.3d 79 (2nd Cir. 1988)
extradition involved a Greek national which was prohibited under
the treaty between the sovereigns. The defendant asserted that the
post-indictment delay was still attributable to the United States
because the government did not attempt to extradite him through an
act of "comity" based on diplomatic means, not treaty. Id. at 83.
The United States responded that it had a "general" policy not to
request extradition as a matter of comity. Id. The court found that
the government's policy was well grounded in futility, since Greece
("like all European countries") specifically had not permitted
extradition as a matter of comity since 1953, and in any case,
comity required that the United States be able to respond favorably
to a similar demand for extradition of an American national, which
it could not. Id.

Notwithstanding the "general" policy not to request
extradition as a matter of comity, Diacolios would require the
government to make an exception to the general rule in his case.
While it is true that the United States policy does not "preclude
requests for surrender not based on the extradition treaty,"
[United States v.] Salzmann, 548 F.2d [395] at 403 [2nd Cir. 1976],

15

we think that compelling the government to consider making such an exception in every case would vitiate the policy and render meaningless "our traditional deference to the judgment of the executive department in matters of foreign policy." Id.; see First Nat'l City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 767...(1972). Indeed, we are aware of no case that holds that a formal request for extradition must be made before due diligence can be found to have existed. See United States v. Walton, 814 F.2d 376, 379 (7th Cir. 1987)....Due diligence surely does not require the government to pursue that which is futile. United States v. Bagga, 782 F.2d 1541, 1543 (11th Cir. 1986). Id.

In the District of Columbia Circuit, there was an 11 year post-Indictment delay. In a case out of the District of Columbia, trial court found that the delay resulted "from the defendant's own actions because 'at the time in the country where he was residing and was a citizen of' meaning Zaire/DROC, 'they did not have an extradition treaty.' "United States v. Tchibassa, 425 F.3d 918, 924 (D.C. Cir. 2006). Again quoting the trial court, the appeals court concluded that "absent a treaty, the government was under no obligation to take any extraordinary measures to negotiate for [the defendant's] extradition." Id. The appellate court affirmed the trial court's holding: "[w]hile the government might have undertaken more frequent and extensive efforts to secure [the defendant's] arrest, it is not clear that any such effort would

16

have succeeded so long as [the defendant] voluntarily remained beyond the United States' legal or practical reach." Id. at 925.

Citing to United States v. Diacolios (discussed supra), the court found that "there is persuasive authority that the government need not take extraordinary measures in order to satisfy the reasonable diligence standard." Id. n. 6. In other words, "it is reasonable that [the government] beat the bushes" trying to get the fugitive to trial, "but it is not reasonable to require [the government] to pull up every tree, bush, and blade of grass by the roots." Cf. Price v. Time, Inc., 416 F.3d 1327, 1348 (11th Cir. 2005).

In United States v. Carbarcas-A, at issue was a five and one-half year delay. 968 F.2d 1212, 1992 WL 158086 (4th Cir. 1992) (unpublished). Carbarcas-A was a Colombian national living in Colombia. Id. In an analogous circumstance to the Venezuelan ban on extraditing its nationals, the United States was unable to extradite Carbarcas-A because of conflict between Colombia's Extradition Treaty with the United States and the Colombian

17

Constitution.[3] Thus justified, the appeals court concluded that there was no unreasonable post-indictment delay. Id.

Taken together, these cases support the conclusion that seeking to extradite Helmeyer from Venezuela would have been futile, and that failure to even seek his extradition was reasonable. The United States was reasonable in assuming that Venezuela, whose constitution prohibits the extradition of Venzuelan nationals, would disapprove of the United States entering Venezuela, arresting a Venezuelan national there, and forcibly removing him from Venezuelan soil. At best, the lack of an extradition process with Venezuela for Venezuelan nationals like Helmeyer fully justifies the delay in this case.

Furthermore, by failing to appear, absconding to Venezuela, and remaining there for 30 years, Helmeyer deliberately avoided prosecution. A deliberate effort to avoid prosecution should be weighed heavily against Helmeyer. "Where the government's failure to locate the defendant results from his own flight from justice or deliberate disappearance, the delay is properly attributable to the defendant." United States v. Anderson, 185 F.3d 875, 1999 WL 393658

---

[3]There were no extraditions by Colombia to the United States during the 1985-- Aug. 1989 period. In 1985 the Colombian Judiciary (Justice Ministry in Bogota) was decimated by an attack....In addition, during 1986-87, the Colombian Supreme Court declared the existing Extradition Treaty with the U.S. unconstitutional. In 1989, August, then President Barco declared a Presidential Decree under which extraditions were again authorized and the U.S. began to receive fugitives whose extraditions we had requested. Id.

*3 (10th Cir. 1999). "A defendant who evades prosecution is culpable in causing the delay." <u>United States v. Brown</u>, 169 F.3d 344, 349 (6th Cir. 1999).

### c. Assertion of Speedy Trial Right

Where a defendant is aware that charges are pending against him, "his failure to make any effort to secure a timely trial on them (and his apparent desire to avoid one) manifests a total disregard for his speedy trial right." <u>United States v. Tchibassa</u>, 452 F.3d at 926; <u>Kesler</u>, 392 Fed.Appx. at 765, 2010 WL 3245096 at *5. When "it is manifestly apparent that a defendant has no serious interest in the speedy prosecution of the charges against him, a court need not ignore the defendant's fugitivity or recalcitrance in determining whether his sixth amendment rights have been violated." <u>Rayborn v. Scully</u>, 858 F.2d 84, 92 (2nd Cir. 1988).

<u>Barker</u> emphasized that "failure to assert the [speedy trial] right will make it difficult for a defendant to prove that he was denied a speedy trial....[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates...that the defendant did not want a speedy trial." <u>Barker</u>, 407 U.S. at 531, 536; <u>Baqqa</u>, 782 F.2d at 1545.

In the instant case, Helmeyer waited 30 years to raise his Sixth Amendment rights.  As such, it is clear that he had no

serious interest in pursuing a speedy trial. Thus, this Doggett/Barker factor weighs very heavily against Helmeyer.

**d.    Prejudice**

The prejudice prong of the Barker analysis needs to be discussed and considered _only_ when the defendant has shown that an excessive delay was caused by the government and the defendant properly asserted his right to a speedy trial. See Barker, 407 U.S. at 530. Here, Helmeyer clearly caused the 30 year delay by absconding to Venezuela. He has continued to prevent this case from going to trial by remaining beyond the jurisdiction of this Court. Furthermore, he has waited over 30 years to assert his right to a speedy trial. Accordingly, there is no need for this Court to consider whether the delay has resulted in prejudice.

CONCLUSION

Wherefore, for the foregoing reasons, the United States requests that Helmeyer's motion to dismiss be denied first, under the fugitive disentitlement doctrine, and second, on the merits. Furthermore, dismissal pursuant to the Federal Rules of Criminal Procedure is not appropriate.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

/s/Ryan K. Buchanan
RYAN K. BUCHANAN
ASSISTANT UNITED STATES ATTORNEY

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404)581-6217
(404)581-0000 (Fax)

Georgia Bar No. 623388
ryan.buchanan@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has this date electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

James R. Hodes


This 24 day of June, 2013.


/s/Ryan K. Buchanan
ASSISTANT UNITED STATES ATTORNEY
ryan.buchanan@usdoj.gov

22